NELSON G. LIVERMORE (WALTER WOOD SUBSTITUTED), PROSECUTOR AND APPELLANT, v. THE MAYOR, &c., OF THE CITY OF MILLVILLE ET AL., RESPONDENTS AND APPELLEES.

Argued November 19, 1913—Decided March 16, 1914.

1. A municipal ordinance providing for an issue of bonds is not invalidated by the mere fact that it omits to recite the statute or statutes relied on as authorizing such bond issue.

2. Where a municipality is authorized by statute to construct a system for the distribution of electricity for public lighting, its contract for such construction is not vitiated because the system is adapted for the subsequent addition of private lighting in case the same should afterwards be authorized.

3. *Certiorari* will not lie to review such a contract on the ground that it involves an expenditure which may require an increase in the tax rate beyond that authorized by the tax acts.

4. An ordinance authorizing a contract for the construction of public work will not be set aside because money to pay for the work is not in hand, so long as the contract has not been actually let.

5. Where the bonds authorized to be issued to pay for a public work have not been actually issued and it appears that the form of such bonds as fixed by resolution recites alleged statutory authority that will not support them and omits statutory authority that will support them, such resolution should be set aside on *certiorari* to the end that such bonds when issued be in proper form.

On appeal from the Supreme Court, on affirmance of ordinance and resolutions relating thereto.

For the appellant, *Joseph H. Gaskill* (*Herbert C. Bartlett* on the brief).

For the respondents, *Louis H. Miller.*

The opinion of the court was delivered by

PARKER, J.    The writ of *certiorari* that was the basis of the adjudication below called for "a certain ordinance of the mayor and common council of the city of Millville, passed on November 1st, 1912, entitled 'An ordinance providing for the construction by and for the city of Millville of an electric light distributing system for public lighting,' and known as ordinance number 117, together with certain resolutions passed by said common council under and by virtue of said ordinance fixing form of bonds to be issued, fixing form of instruction to bidders, contract and contractor's bond and any and all proceedings taken by the said city of Millville, under and by virtue of said ordinance number 117, relative to the construction of an electric light distributing

system or the establishment of an electric lighting plant or system in said city of Millville."

All these proceedings were reviewed by the Supreme Court, and all affirmed. The appeal challenges the decision in all particulars.

No claim is made of any irregularity in the procedure leading up to the ordinance, but the argument seems to be that the bonds proposed to be issued to raise the money required to carry out the electric lighting plan would be illegal as on their face they purport to rely on statutes that are insufficient to support them. We shall come to this question in a moment. So far as the ordinance is concerned, it appears on examination not to rely on any particular statute. Section 1 ordains generally the construction of the plant. Section 2 refers to certain designated plans and specifications. Section 3 provides a letting of the work by contract and its execution under supervision of an engineer named. Section 4 enacts that to raise the necessary funds there shall be issued $35,000 of bonds, to be dated November 1st, 1912, at four and one-half per cent. semi-annually, payable in thirty years; their denominations, how executed, where payable, and so on, and provides a plan for a sinking fund. There is not a word in the ordinance as to any specific statute relied on as justifying this bond issue. If there was and is any legislation permitting such a bond issue for the purpose indicated, the city is entitled to rely upon it without specific reference thereto in the ordinance. The Supreme Court held, and properly, that under the act of 1894 (*Pamph. L., p.* 477; *Comp. Stat., p.* 3548), the city was invested with power to erect an electric light distributing system of poles, wires, &c. (neither the act nor the ordinance contemplated a generating plant), and to raise the required money by taxation; and by the act of 1902 (*Pamph. L., p.* 782; *Comp. Stat., p.* 938) was further authorized to raise by bond issue money for any purpose for which it might raise money by taxation.

Three other objections are advanced. The first is that the system is intended to supply private consumers as well as to

serve the public uses, and that for such private supply there is no statutory authority. An examination of the specifications shows that the present plan is to construct for public lighting only, but in such a way that later on, private lighting may be added. We cannot see that there is anything illegal in this. It is true that under the statutes relied on, private lighting is not authorized. It may be true that a public plant that is adaptable readily to private lighting also may be more expensive than one that is not; but granting this, the question of so constructing the plant is one of business judgment, and it may be excellent judgment so to do in anticipation of a possible enlargement of municipal powers by legislative authority.

The second objection is that the limit of taxation has been exceeded.

This does not appear; for assuming that the present rate is at its limit, and that the interest on the bonds and cost of maintenance would go to swell the rate, *non constat* that a sufficient saving will not be effected by the discontinuance of the old system or in other ways to offset this increase. In any event, it is difficult to see how an anticipated increase in the tax rate can be made a legal objection to a particular ordinance calling for the expenditure of money. If the municipal body incurs expense that actually results in raising the tax rate, contrary to the prohibition of the Hillery act (*Pamph. L.* 1906, *p.* 206; *Comp. Stat., p.* 5164) and supplements, the remedy would seem to be by way of an attack on the tax rate and not on a particular item on which it is based.

The third objection is that by the ordinance the city proposes to construct the lighting system "forthwith" and without having raised the necessary funds either by taxation or bond issue, and having no such funds on hand.

The answer is that so far, the city is committed to no expense whatever except the compensation of the engineer and cost of advertising. It does not appear that any contract has been let; and every presumption is that the city will not commit itself to a binding obligation until the necessary funds, *i. e.*, the proceeds of bonds, are on hand to meet it.

*56 Vroom.*                Livermore v. Millville.

If a contract had been made, the case would be different; but up to the issuance of the writ, there was merely a declaration of intention, and the *allocatur* naturally arrested the proceedings at that point.

This disposes of the objections to the ordinance itself, which objections we find to be without substance.

But the resolution prescribing the form of the bonds to be issued is defective, in that the bonds specifically rely on various statutes, of which it is doubtful whether any one, or any two or more taken together, will support the bond issue. The authority for building the plant is rested on the act of 1894 (which as we have seen is sufficient), and the act of 1911, declared void in the Jaegle case. *In re Jaegle, 54 Vroom* 313. The authority for the bond issue is rested on the act of 1894, in itself ineffective for that purpose; of 1895, page 464 (*Comp. Stat., p. 930*), which authorizes bonds only to pay for lands taken; of 1904, page 86 (*Comp. Stat., p. 938*), whose efficacy for this purpose has been denied by the Supreme Court (*Brooks v. Sea Isle City, 83 Atl. Rep. 779*) and the aforesaid act of 1911. It is not rested on the act of 1902 which, as we have seen, supports it when taken with the act of 1894.

It may well be that if the bonds had been issued and were in the hands of *bona fide* holders, they would be enforceable though ostensibly based on the wrong statutes. *Dill. Mun. Corp. (5th ed.), § 936.*

But where the form of the bond is attacked *in limine,* as in this case, the court should set it aside if illegal in itself, to the end that the bonds when issued should recite their true basis. Accordingly the resolution of November 1st, 1912, embodying the form of bond to be issued, will be set aside, but without costs, and to that extent the judgment of the Supreme Court will be reversed.

*For affirmance*—None.

*For reversal*—THE CHANCELLOR, CHIEF JUSTICE, TRENCHARD, PARKER, BERGEN, KALISCH, BOGERT, VREDENBURGH, CONGDON, WHITE, JJ.   10.